IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Nabil Keedi, <br><br> Plaintiff, <br><br> v. <br><br> Menard, Inc., <br><br> Defendant. | Case No. 3:20-cv-50375 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nabil Keedi sues Defendant Menard, Inc. on a theory of premises liability for injuries that occurred when he slipped and fell over a brown box that had been temporarily placed in the aisle by an employee stocking shelves. Menard now moves this Court to enter summary judgment in its favor. For the reasons below, the Court denies that motion [36].

**I.  Background**

On February 7, 2019, Nabil Keedi visited the Menard retail store in Machesney Park, Illinois, to purchase tile glue.[1] The aisle in which the glue was located was about forty feet long. A box had been left on the floor of the aisle by an employee who was stocking shelves. The employee needed a ladder to put the box on the shelf, so he left it in the floor up against the shelf so that he could go get a ladder. The box was left unattended for about ten minutes. Before getting the

---

[1] The undisputed facts recited here are taken from the parties Local Rule 56.1 statements of undisputed facts, dkts. 38, 45, 46, and, where necessary, from the depositions directly.

1

ladder, he finished placing a different box on another shelf, and before he could return with the ladder, Keedi tripped over the box and fell.

A photo of the brown box is attached to this opinion as Appendix A. It shows the box as it was positioned when Keedi tripped over it. The box was located against the shelf and on the floor, near the end of the forty-foot-long aisle. The parties agree that the box was fifteen inches long, about ten inches wide, and eight and a half inches tall.

While walking down the forty-foot aisle, Keedi scanned the shelves looking for the tile glue. He had a specific type in mind and had a picture of it on his phone. He spotted the glue ahead of the area where the box was located. He looked at the shelf to get the glue and then tripped over the box. In his deposition, Keedi initially testified under oath that he was not distracted:

> Q: You weren't looking at your phone when this happened?
> A: No.
> Q: You weren't talking on your phone when this happened?
> A: No, No.
> Q: And no one in the store was talking to you?
> A: No.
> Q: So you weren't distracted by any of these things?
> A: No.
> Q: And you weren't distracted by anything else?
> A: No.
> Q: You knew what you needed?
> A: Yes.
> Q: You went to get it?
> A: Yes.
> Q: And you weren't distracted --
> A: Exactly.
> Q: -- by any signs or --
> A: Exactly.
> Q: -- talking?
> A: Exactly.

Dkt. 38-1, at 29, 30 (Keedi Dep. 111:17–24, 112:1–17). On "friendly cross examination" at his deposition, Keedi "clarified" his sworn testimony based on questions from his counsel:

> Q: So when you were approaching this box, you were looking for the glue?
> A: Yes.
> Q: And your eyes were – if you can, they were looking straight out?
> A: They were eye level, almost eye level. The glue was eye level. I remember where on the shelf they were.
> Q: So you were pretty much just constantly distracted by the items that were on the shelves?
> A: Yeah. You're looking where to find and if this is what the contractor want and then you're walking and …

*Id.* at 31 (Keedi Dep. 117:12–24).

Not to put too fine a point on this conflicting testimony, but Keedi responded that he was not distracted (indeed, to the point of being characterized as "exactly") when questioned by Menard's counsel. But when led with leading questions by his own counsel, Keedi was "pretty much constantly distracted." Based upon the latter, Keedi claims that Menard was negligent in leaving the box in the aisle and that he suffered injuries because of that negligence.

## II. Analysis

On summary judgment, the movant has the burden of showing that "no genuine dispute as to any material fact" exists and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). No "genuine" dispute exists if a court would be required to grant a Rule 50 motion at trial. *Id.* at 250–51. The Court must construe the "evidence and all

3

reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). "Summary judgment is only warranted if, after doing so, [the court] determine[s] that no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

To establish negligence in Illinois, the plaintiff must show that the defendants owed a duty of care, that it breached, and that the breach caused the injuries. *Bruns v. City of Centralia*, 21 N.E.3d 684, 688–89 (Ill. 2014). These are elements, not factors. To succeed, Keedi would have to prove all of them at trial. Therefore, to succeed on a motion for summary judgment, Menard need only show that Keedi cannot prevail on any one of the elements.

Menard argues that Keedi cannot establish the first element: duty. Dkt. 37, at 4. Whether Menard owed Keedi a duty of care is a question of law. *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018). But this legal question is based upon the factual circumstances presented. *Quinton v. Kuffer*, 582 N.E.2d 296, 300 (Ill. App. Ct. 1991) ("the existence of a duty is a question of law based on the facts presented") (cleaned up); *see also DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 978 (N.D. Ill. 2021). That determination is made "by asking 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.'" *Id.* (quoting *Bucheleres v. Chicago Park Dist.*, 665 N.E.2d 826, 831 (Ill. 1990)). Illinois courts analyze four factors in determining whether a duty of care

existed: "(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Id.* (quoting *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2010)). Although elements three and four must still be evaluated, the open and obvious doctrine can provide a shortcut to analyzing the first two elements. *Bruns*, 21 N.E.3d at 690. "Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Id.* By the same token, however, if the defendant "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it," then the foreseeability of injury and the likelihood of injury are both increased. *Dunn*, 880 F.3d at 909.

Under the open and obvious doctrine, a party that owns or controls the land is generally "not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Bruns*, 21 N.E.3d at 689 (quoting *Rexroad v. City of Springfield*, 796 N.E.2d 1040, 1046 (Ill. 2003)). "Obvious" means that "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.* at 690. Because the analysis is objective, the danger was open and obvious "if a reasonable person with the plaintiff's knowledge of the situation would have appreciated and avoided a hazard created by the defendant's

5

actions." *Dunn*, 880 F.3d at 907 (quoting *Smith v. MHI Injection Molding Mach., Inc.*, No. 10-cv-8276, 2014 U.S. Dist. LEXIS 54498, at *18 (N.D. Ill. April 18, 2014)).

In this case, Keedi walked almost the entire length of the forty-foot-long aisle. The photograph in Appendix A shows that the aisle was not cluttered; persons exercising care to look where they walked would have seen the box and appreciated it as a tripping hazard. That hazard might be less pronounced because the box was up against the shelf, rather than directly in the middle of the aisle. But the box is still an open and obvious hazard that any reasonable person exercising ordinary perception, intelligence, and judgment would have seen and considered

Notwithstanding the open and obvious nature of the box, Keedi invokes the distraction exception, an exception to an exception. As stated above, this exception to the open and obvious doctrine applies when the defendant "has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Dunn*, 880 F.3d at 909; *see also Williams v. Walmart, Inc.*, No. 18 C 1356, 2019 U.S. Dist. LEXIS 92778, at *7 (N.D. Ill. June 4, 2019).

In *Bruns v. City of Centralia*, 21 N.E.3d 684 (Ill. 2014), the Illinois Supreme Court outlined the contours of the distraction exception:

> Each of the foregoing cases also made clear that the distraction was reasonably foreseeable by the defendant. In *Ward*, the defendant sold the plaintiff the vision-obscuring merchandise and was keenly aware of the placement of the post directly outside the doors. In *Rexroad*, the municipality and the school board could reasonably foresee that a student worker, required to traverse the parking lot where the hole was located, could become distracted by the task he was directed to perform. In *Deibert*, the defendant created the distraction. And in *American*

6

> *National Bank*, the defendant could foresee that a worker's need to watch his footing on the walkrail would distract him from the overhead power line.

*Id.* at 693. In *Bruns*, the nearly eighty-year-old plaintiff stubbed her toe on a crack in the sidewalk caused by the roots of a nearby tree, which the city declined to remove because of its historical status. *Id.* at 687. *Id.* But the plaintiff in *Bruns* was not looking at the sidewalk crack because she was looking "towards the door and the steps" of the clinic. *Id.* at 693. Nothing required the plaintiff to divert her attention, however. The court explained that the inquiry was not whether she was looking elsewhere, but why she was looking elsewhere. *Id.* She hadn't looked elsewhere to avoid another hazard or because of the foreseeable task at hand. *Id.* Thus, if she was distracted, it was a self-made distraction that the defendant could not foresee. *Id.* at 693–94 (quoting *Whittleman v. Olin Corp.*, 832 N.E.2d 932, 936 (2005)). "Were we to conclude, as plaintiff does, that simply looking elsewhere constitutes a legal distraction, then the open and obvious rule would be upended and the distraction exception would swallow the rule." *Id.* at 694. At bottom, the analysis is one of reasonableness; the court merely asks whether the defendant "should reasonably anticipate injury to those entrants on his premises *who are generally exercising care for their own safety, but who may reasonably be distracted.*" *Deibert v. Bauer Bros. Constr. Co.*, 566 N.E.2d 239, 243–44 (Ill. 1990) (emphasis added).

In this case, Keedi invokes the distraction exception. Specifically, he argues that Menard should reasonably expect that its customers will become distracted by

7

looking at the items on the shelves, so that it should reasonably foresee that its customers might trip over items left in the aisle. Dkt. 42, at 7–8. Indeed, the distraction exception can apply when customers are distracted by items on store shelves. *Williams*, 2019 U.S. Dist. LEXIS 92778, at *9–12 (collecting numerous cases holding the same). Denying summary judgment, the *Williams* court determined that the plaintiff could have been "distracted for a time while she viewed the merchandise after she first noticed the stack base such that she forgot to take account of its presence when she began to walk away. *Id.* And the Restatement confirms this as well.[2] "The A Department Store has a weighing scale protruding into one of its aisles, which is visible and quite obvious to anyone who looks. Behind and about the scale it displays goods to attract customers. B, a customer, passing through the aisle, is intent on looking at the displayed goods. B does not discover the scale, stumbles over it, and is injured. A is subject to liability to B." Restatement (Second) of Torts § 343A, cmt f. illus. 2 (1965). Still, Illinois courts do not apply the distraction exception in absence of any evidence that the plaintiff was actually distracted. *Bruns*, 21 N.E.3d at 691, 694.

In this case, a reasonable jury could conclude that Keedi was distracted, but a reasonable jury could also conclude that he was not.[3] The question, therefore, is not

---

[2] Illinois courts have adopted this section of the Restatement. *Bruns v. City of Centralia*, 21 N.E.3d 684, 689–90 (Ill. 2014) ("The open and obvious rule is also reflected in section 343A of the Restatement (Second) or Torts, which this court has adopted.").
[3] In briefing, Menard asserted that Keedi's search for the tile glue had ended before he was tripped, and thus he could not have been distracted by looking at the shelves. Though the relevant statements are not disputed, the statements (written by Menard) do not clearly establish Menard's asserted story. Dkt. 38, ¶¶ 16–18; Dkt. 45, ¶¶ 16–18.

for the Court. Keedi tripped over a sizeable brown box. He claims, however, that he was distracted by the items on the shelf. Dkt. 42, at 8 ("As Mr. Keedi walked down the aisle where he believed the tile glue to be located, his attention became fixed on the various brands of tile glue Menards put on display."). The box was placed against the shelves, but on the floor. It was not in the middle of the aisle, or near the middle of the aisle. It was, however, in plain view; people watching where they were walking would have seen it. Furthermore, Keedi walked almost the entire length of the forty-foot-long aisle before encountering the box. Under these circumstances, a reasonable jury could conclude that Keedi was not "generally exercising care" for his own safety." *Deibert*, 566 N.E.2d at 244. But the distraction exception applies when customers see the hazard but then later forget about it because of the distraction. *Dunn*, 880 F.3d at 909. Currently, the factual record is not sufficiently undisputed to make this determination on summary judgment, in part because the Court is not allowed to make credibility determinations at this stage. *See Payne v. Milwaukee Cty.*, 146 F.3d 430, 432 (7th Cir. 1998).

    Menard reasonably argues that Keedi admitted that he was not distracted. But Keedi's deposition testimony allows for a different, possibly reasonable, conclusion as to whether he was distracted. On direct, he explained that he was not distracted. Dkt. 38-1, at 29–30 ("Q: And you weren't distracted -- A: Exactly. Q: -- by any signs or -- A: Exactly."). But that came while defense counsel asked him questions about whether he was distracted by his cell phone. When examined by his own attorney, however, Keedi agreed that he was distracted by items on the shelf

9

because he was searching for the tile glue. *Id.* ("Q: So when you were approaching this box, you were looking for the glue? A: Yes. Q: And your eyes were – if you can, they were looking straight out? A: They were eye level, almost eye level. The glue was eye level. I remember where on the shelf they were. Q: So you were pretty much just constantly distracted by the items that were on the shelves? A: Yeah. You're looking where to find and if this is what the contractor want and then you're walking and . . . "). Whether a reasonable jury would be convinced by Keedi's sudden 180° reversal in his sworn testimony based upon who questions him is not for the Court to answer on summary judgment.

Because Illinois courts recognize distraction based on looking at items displayed on shelves, a reasonable jury could conclude that Keedi was distracted. A failure to see the box in general is unreasonable given that Keedi walked almost the entire length of the forty-foot-long aisle before encountering the box. But Keedi could have been distracted enough to forget about the hazard posed by the box, which was located near the tile glue. The evidence is not sufficient to answer the question, nor is it undisputed. The question must be answered by a jury.

Because the Court must leave for the jury the question of whether the distraction exception applies, the Court cannot properly consider the first two factors of the duty of care analysis. Still, the test presents factors, not elements. *Bujnowski v. Birchland, Inc.*, 2015 IL App. (2d) 140578, ¶ 46. Regardless, the third and fourth factors are not clearly in Menard's favor either. For the third factor, the Court considers the magnitude of the burden on Menard to guard against the

10

injury. For the fourth factor, the Court considers the consequences of placing that burden on Menard. Neither weigh in Menard's favor. *Id.*

The undisputed facts show that an employee was stocking shelves and needed to go get a ladder. So, he placed the box on the floor to go stock another item on another shelf and then to retrieve a ladder. Menard argues that the burden is high because it would have to constantly station employees in all aisles to oversee its customers. Dkt. 37, at 8. Not so. The burden on Menard to prevent this specific injury was not onerous. The burden was simple and easy to fulfill: don't leave things in the walkway unattended. The pictures in Appendix A shows that the employee could have temporarily placed the box in a number of locations on the shelves or on top of other items. Indeed, that is what happened just after the injury. Dkt. 46, ¶ 31. Instead, the employee left the box in the walkway. Menard responds by citing to *McCarty v. Menard*, in which a court in this district determined that the burden was too high on Menard because they would have had to "constantly monitor the positions of these signs through the day." 319 F. Supp. 3d 974, at 988 (N.D. Ill. 2018). But, in that case, the court also explained that "[t]here's no evidence how the sign got out of place or when it got out of place." *Id.* In this case, however, the undisputed evidence shows that the Menard employee placed the box in the walkway even though he could easily have done otherwise. Because the burden of preventing the injury was low and the consequence was physical injury to its customer, these two factors weigh in favor of finding a duty of care. Furthermore, as explained in *Bujnowski*, the third and fourth factors likely cannot outweigh the first

11

two factors, even if the burden and its consequences are minimal. *Bujnowski*, 2015 IL App. (2d) 140578, ¶ 46.

Thus, Menard has failed to meet its burden to show that it is entitled to judgment as a matter of law.

### III. Conclusion

For the reasons stated above, the Court denies Menard's motion for summary judgment [36]. The case is referred back to Magistrate Judge Schneider. The parties are ordered to discuss with Magistrate Judge Schneider whether a settlement conference would be a worthwhile exercise.

Date: December 3, 2021

_____
Honorable Iain D. Johnston
United States District Judge

## APPENDIX A



