IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| NABIL KEEDI, | |
| Plaintiff, | |
| v. | Case No. 3:20-cv-50375 |
| MENARD, INC., | |
| Defendant. | Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER ON MOTIONS *IN LIMINE***

Plaintiff Nabil Keedi alleges he injured his right hand, shoulder, and knee when he tripped over a box at one of Defendant Menard, Inc.'s stores. This matter is set for trial beginning on November 3, 2025. Both Keedi [102-15] and Menard [102-14] have submitted their motions *in limine* in preparation for trial. For the following reasons, Keedi's motion is granted in part and denied in part. Menard Inc.'s motion is granted.

**I.     Plaintiff's Motion *in Limine***

Mr. Keedi has made three requests in its motion *in limine* [102-15]: (i) seeking to bar references to the subsequent treatment of his left shoulder and right leg because he's not alleging they were injured during his fall; (ii) seeking to bar testimony from defense witnesses about how he fell; and (iii) seeking to bar Menard from arguing that it did not have notice of the box in the store aisle. Mr. Keedi's

motion (i) is partially granted (as to the leg) and partially denied (as to the shoulder). His motion (ii) is denied. His motion (iii) is granted.

    i.    *Chronic Injuries*

Mr. Keedi alleges that he injured only his right hand, right shoulder, and knee during his fall. *See* Complaint [1-1] at 5. He argues that evidence of treatment he received for injuries to any other parts of his body are therefore irrelevant and so seeks to bar any evidence of treatment he later received for his left shoulder and right leg. Plaintiff's Motion *in Limine* [102-15] at 1-2.

    a. *Shoulder*

Menard responds that evidence of the treatment Keedi sought for his left shoulder in 2021 showed that it was in the same condition as his right shoulder after his fall in 2019 and needed the same treatment. As a result, Menard contends that it should be allowed to explore whether damage to his right shoulder was attributable not to his 2019 fall, but to the same chronic degenerative condition found in his left shoulder in 2021. *See* Defendant's Response [106] at 1-2. In short, Menard argues that *both* of Mr. Keedi's shoulders required treatment due to normal wear and tear, but Keedi is attributing the injury to one shoulder to his fall, and the other to chronic degeneration. *Id*.

In his deposition, the defense expert provided opinion testimony about Mr. Keedi's left shoulder. *See* dkt. 106-3. Specifically, Dr. James Bresch offered the following opinion:

> Q: I guess what I'm trying to understand is you say he wouldn't have needed [surgery] around that time. What was it about the

2

> fall that made the surgery required to be performed sooner than it otherwise would have?
>
> A: Well, I don't know. I don't have an explanation for why when he presented in August and eventually had surgery he had intraoperative findings that were not consistent with his initial MRI. So either he had ongoing derangement to the shoulder with his normal lifestyle, just degenerative changes *as he had on the other shoulder*, or there was another event.

*Id.* at 33:2-33:12 (emphasis added).

Later in the deposition he offered the following additional opinion about Mr. Keedi's left shoulder:

> Q: ... Dr. Bresch, do you agree with Dr. Whitehurst's testimony that the left shoulder diagnosis and treatment were nearly identical to the right shoulder diagnosis and treatment?
>
> A: Yes.
>
> Q: And that would support your conclusion that his problem on the right is chronic, just like his problem on the left was chronic?
>
> A: Yes.
>
> Q: And left—and the left one was not with trauma, true?
>
> A: Correct.

*Id.* at 58:23-59:11.

Notwithstanding the slightly misleading nature of the question—Dr. Whitehurst testified to the injuries being "similar," not "nearly identical," see dkt. 106-1 at 11:10—this foundation is sufficient to make the 2021 left shoulder treatment relevant to issues of both causation and damages in this 2019 case.

3

Evidence is relevant if it has "*any* tendency to make a fact more or less probable than it would be without the evidence; and… the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The Court might be admittedly skeptical as to the reliability of this expert opinion. A surgery in 2021 to repair degeneration on one shoulder seems to have little bearing on the condition of the other shoulder in 2019. But any bearing is still enough to have "any tendency." Fed. R. Evid. 401. The reliability of this opinion may certainly be explored on cross-examination at trial. This cross-examination will serve to mitigate any risk of unfair prejudice. Fed. R. Evid. 403.

Plaintiff's motion *in limine* [102-15] is denied as to the subsequent treatment of the left shoulder.

### b. *Knee*

The record is confusing as to which knee was allegedly injured during Plaintiff's fall. Plaintiff's complaint and the transcript of Dr. Todd Rimington's deposition refer to a *left* knee injury. *See* dkt. 1-1 at ¶ 18 ("… right hand, right shoulder, and left knee…"); dkt. 106-4 at 20:16-20 ("Q: And what imaging records did you review? A: The ones that are listed there. Q: They are what? A: An x-ray from 2/7/19. Both the right shoulder, left knee…").

However, Plaintiff's motion *in limine* and the expert report of Dr. James Bresch refer to a *right* knee injury. *See* dkt. 102-15 at 1 ("Plaintiff contends that the incident at issue resulted in injuries to his right palm, right knee and right shoulder. Plaintiff testified in his deposition that his right knee injury resolved

4

about a month after the incident."); dkt. 106-2 at 1-2 ("… then landing on his right knee.").

Notwithstanding this inconsistency, Plaintiff's motion *in limine* [102-15] contends that "a few years [after his fall, Mr. Keedi] developed a nerve issue in his right leg which is unrelated to the incident at issue." Plaintiff's Motion *in Limine* at 2. Mr. Keedi argues for its exclusion at trial.

Menard does not address Mr. Keedi's argument about his leg in its response. Nor is any evidence of subsequent treatment presented in its six exhibits. Indeed, their own expert's report remarks "I am not rendering an opinion to the hand or knee treatment." Expert Report of Dr. Bresch [106-2] at 2. Dr. Whitehurst, testifying as Mr. Keedi's surgeon, only commented that Mr. Keedi was seeing a different provider for his right knee by the spring of 2022. Deposition of Dr. Whitehurst [106-1] at 60:18-19.

Menard has provided nothing to demonstrate that the subsequent treatment to the knee is relevant. So, it's irrelevant and inadmissible. Fed. R. Evid. 402.

  ii. *How Plaintiff Fell*

There is no video of Mr. Keedi's fall, nor did any witness directly observe the fall. Pretrial Conference Transcript [110] at 10:19. Mr. Keedi argues in his motion that because of this, defense witnesses should be barred from testifying as to how he fell. Plaintiff's Motion *in Limine* [102-15] at 3.

In response, Menard asserts that its employee, Spencer Moore, heard a crash and arrived at the scene within seconds of Mr. Keedi's fall. Defendant's Response

5

[106] at 4. Menard argues that Mr. Moore should be permitted to testify to his observations upon arriving at the scene and observing Mr. Keedi, blood, and the surrounding scene at the Menards store, leading to his opinion of how Keedi fell. *Id.*

On the day of the fall, Mr. Moore wrote in a witness statement that he heard a crash and came around the corner to see the guest getting up from a fall. Moore's Statement [106-6]. He goes on to infer: "the fall caused him to fall into our tile trim rack, and as he was falling he grabbed onto a piece of carpet gripper, which caused cuts to his hand." *Id.* Likewise, in his deposition, Mr. Moore denied having witnessed Mr. Keedi fall, but testified to seeing a cut on Keedi's hand that matched the carpet trimmer, seeing blood on a carpet gripper, and seeing the box in question "about ten to fifteen feet away." Deposition of Spencer Moore [106-5] at 31:1-5, 36:10-38:21.

Lay witnesses may only provide opinion testimony to the extent it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

Here, this proposed testimony by Mr. Moore is squarely permissible. Given the underlying facts, foundation, and Mr. Moore's testimony, his opinion as to how Mr. Keedi fell (stumbling 10-15 feet into a carpet gripper) is rational, helpful to understand the testimony and issues, and not based on specialized knowledge.

6

The jury will ultimately form its own conclusions about what occurred, and Mr. Moore will not be permitted to testify as if he did witness the fall. However, he may testify to his opinion based on his own observations. The motion *in limine* [102-15] is denied as to Mr. Moore's testimony of how Mr. Keedi fell.

### iii. Notice

Mr. Keedi's final motion *in limine* seeks to bar Menard from arguing that they lacked notice of the box being present in the aisle where he fell. Motion *in Limine* [102-15] at 4. Menard "has not and does not plan to argue it did not have notice of the box in the aisle." Defendant's Response [106] at 9. As Menard does not oppose the motion, it is granted. Menard is prohibited from arguing lack of notice at trial.

## II. Defendant's Motion *in Limine*

Menard has made five requests in its motion *in limine* [102-14]: (i) prohibiting hearsay medical opinions; (ii) limiting expert testimony to disclosed opinions; (iii) prohibiting either party from asking the jury to place themselves in the position of a party; (iv) prohibiting any argument or suggestion appealing to juror's sense of safety or fear rather than the evidence (a/k/a the "reptile theory"); and (v) prohibiting any argument or suggestion related to the relative wealth of the parties.

Mr. Keedi never objected to any of these requests. Thus, in the absence of any objection, the motion is granted.

7

III. **Conclusion**

For the above reasons, Plaintiff's motion *in limine* is granted in part and denied in part. Menard is barred from introducing evidence related to subsequent treatment of the knee and from claiming a lack of notice as to the box in the aisle.

Defendant's motion *in limine* is granted. The parties are prohibited from providing hearsay medical opinions; expert testimony shall be limited to disclosed opinions; neither party may ask the jury to place themselves in the position of a party; neither party may appeal to a juror's sense of safety or fear rather than the evidence; and neither party may make arguments related to the relative wealth of the parties.

Entered: October 3, 2025                                  By: _____
                                                          Iain D. Johnston
                                                          U.S. District Judge